**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SANDRA GRUNZINGER and PHILIP GRUNZINGER, individually and as parents and next friends of I.G., a minor,<br><br>Plaintiffs,<br><br>v.<br><br>SPECIAL SCHOOL DISTRICT OF ST. LOUIS COUNTY,<br><br>and<br><br>PARKWAY C-2 SCHOOL DISTRICT,<br><br>Defendants. | ) | Case No. ____________________ |

**COMPLAINT AND PETITION FOR JUDICIAL REVIEW OF ADMINISTRATIVE DECISION UNDER THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT**

Plaintiffs Sandra Grunzinger and Philip Grunzinger ("Parents"), individually and on behalf of their minor son, I.G. ("Student"), by and through counsel, bring this civil action under 20 U.S.C. § 1415(i)(2) and Mo. Rev. Stat. § 162.962 for review of the October 2, 2026 Decision of the Missouri Administrative Hearing Commission ("AHC" or "Commission") in *Grunzinger v. Special School District of St. Louis County, et al.*, AHC No. 26-1026, and state as follows:

## PRELIMINARY STATEMENT

1. This case asks whether a school district may insulate a new IEP and a new placement decision, made for a new school year, from any administrative review because the parents settled a different dispute about an earlier IEP. The answer under the IDEA and under settled preclusion law is no.

2. In May 2026, Parents and Defendants settled a prior due process complaint (AHC No. 25-1614) concerning Student's December 18, 2025 IEP. By its express terms, the settlement released only claims for conduct occurring up to and including its May 4, 2026 effective date, and it contemplated that, if Student re-enrolled, his IEP team would convene and could amend his IEP.

3. Student re-enrolled. On August 20, 2026, his IEP team met, and on August 21, 2026, Defendants issued a new Prior Written Notice refusing Parents' request to continue Student at To The Moon Education, where he had made nine months of documented progress, and directing him to switch schools to KVC School, a school SSD contracted with for SSD students. Parents timely challenged that August 2026 IEP and placement decision.

4. Without a hearing, the Commission dismissed Parents' complaint as barred by res judicata, reasoning that Parents sought the same placement they had sought before. That ruling is legally erroneous. Claim preclusion does not bar claims predicated on events that occurred after the prior judgment; the IDEA requires that a child's placement be determined at least annually and that his IEP be revised in light of new information; and the Commission resolved disputed facts against the non-moving party on what it treated as a motion for summary decision. Plaintiffs ask the Court to reverse and either remand for a hearing on the merits or decide the merits on the administrative record and additional evidence.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction under 20 U.S.C. § 1415(i)(2)(A) and (i)(3)(A), which authorize any party aggrieved by the findings and decision of a state due process hearing to bring a civil action in a district court of the United States without regard to the amount in controversy, and under 28 U.S.C. § 1331.

6. Mo. Rev. Stat. § 162.962(3) likewise authorizes judicial review of the Commission's decision by petition in a federal court of competent jurisdiction.

7. Venue is proper in this District and Division under 28 U.S.C. § 1391(b) because Defendants are located in St. Louis County, Missouri, Plaintiffs reside there, and the events giving rise to this action occurred there.

## TIMELINESS

8. The Commission issued its final decision (the "Decision") on October 2, 2026.

9. This action is timely. It is filed within forty-five days after the Commission's final decision, Mo. Rev. Stat. § 162.962(3), and within ninety days of the decision, 20 U.S.C. § 1415(i)(2)(B).

## PARTIES

10. Student I.G. is a twelve-year-old child who resides with his Parents within the boundaries of Parkway C-2 School District and Special School District of St. Louis County. He is a "child with a disability" under 20 U.S.C. § 1401(3)(A), eligible for special education under the category of Autism. Pursuant to Fed. R. Civ. P. 5.2(a)(3), he is identified by his initials.

11. Plaintiffs Sandra Grunzinger and Philip Grunzinger are Student's parents and natural guardians and reside in St. Louis County, Missouri. They bring this action on Student's behalf as next friends under Fed. R. Civ. P. 17(c)(1)(A) and (c)(2), and in their own right, as the IDEA grants parents independent, enforceable rights. *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007).

12. Defendant Special School District of St. Louis County ("SSD") is a public school district and local educational agency under 20 U.S.C. § 1401(19) responsible for providing special

education and related services to eligible students residing in its component districts, including Student.

13. Defendant Parkway C-2 School District ("Parkway") is a public school district and local educational agency under 20 U.S.C. § 1401(19) in St. Louis County, Missouri, in which Student resides. SSD and Parkway are referred to together as "Defendants" or "the Districts."

14. Defendants receive federal funds under the IDEA and are bound by its requirements and by the Missouri State Plan for Special Education.

## STATUTORY AND REGULATORY FRAMEWORK

15. The IDEA requires states and local educational agencies to make a free appropriate public education ("FAPE") available to every eligible child with a disability. 20 U.S.C. § 1412(a)(1). FAPE is delivered through an individualized education program ("IEP") that is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 399 (2017).

16. The IDEA's obligations are continuing, not one-time. Each district must have an IEP in effect for each eligible child at the beginning of each school year, 20 U.S.C. § 1414(d)(2)(A); 34 C.F.R. § 300.323(a); must review the IEP periodically, but not less than annually; and must revise it as appropriate to address, among other things, the child's progress, "information about the child provided to, or by, the parents," and "the child's anticipated needs." 20 U.S.C. § 1414(d)(4)(A); 34 C.F.R. § 300.324(b).

17. A child's educational placement must be "determined at least annually," must be "based on the child's IEP," and must be made by a group that includes the parents. 34 C.F.R. § 300.116(a)–(b); 20 U.S.C. § 1414(e).

18. Whenever a district proposes or refuses to initiate or change a child's educational placement, it must provide prior written notice describing the action, the reasons for it, and the other options considered and why they were rejected. 20 U.S.C. § 1415(b)(3), (c)(1).

19. Parents may present a due process complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A); Mo. Rev. Stat. § 162.961.1. Nothing in § 1415 "shall be construed to preclude a parent from filing a separate due process complaint on an issue separate from a due process complaint already filed." 20 U.S.C. § 1415(o).

20. In a civil action under § 1415(i)(2), the Court "shall receive the records of the administrative proceedings," "shall hear additional evidence at the request of a party," and, "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C); *accord* Mo. Rev. Stat. § 162.962(1). The Court gives "due weight" to the administrative proceedings, *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982); *K.E. ex rel. K.E. v. Indep. Sch. Dist. No. 15*, 647 F.3d 795, 803 (8th Cir. 2011), but independently determines the legal significance of the facts and reviews questions of law, including the application of claim preclusion, de novo. *See K.E.*, 647 F.3d at 804.

## FACTUAL ALLEGATIONS

### A. Student's Disability and Educational History

21. Student was diagnosed with Autism Spectrum Disorder in 2019 and was found eligible for special education under the category of Autism in March 2020. His presentation corresponds to the Pathological Demand Avoidance profile of autism, marked by a strong need for

autonomy, heightened stress-proneness, and resistance to demands as a means of managing anxiety.

22. In the public-school setting, Student experienced escalating behavioral difficulties, repeated disciplinary removals, seclusion and physical restraint, shortened school days, and chronic absence. By late 2025, he was unable to enter his Parkway middle school classrooms at all.

23. Student's IEP team determined that the Districts could not meet his needs in a public setting and that he required a private separate placement. For many months, the Districts were unable to identify a private separate school that would accept Student or that he could tolerate. The schools considered included KVC; during a tour of KVC, Student became dysregulated and insisted on leaving as soon as he was shown a classroom, and Parents reported to the team that he did not feel he could attend school there.

24. Parents located To The Moon Education ("To The Moon"), a small private school staffed by certified teachers that offers one-on-one and small-group instruction and customized programming for learners whose needs have not been met elsewhere. Student shadowed there, was at ease, and asked to return. To The Moon is not on the Missouri Department of Elementary and Secondary Education's ("DESE") list of approved private agencies.

25. Student's December 18, 2025 IEP provided for a private separate day placement with special education 100% of the time, along with social skills instruction, social work counseling, language therapy, occupational therapy consultation, a behavior intervention plan, extended school year services, and transportation.

**B. The Prior Due Process Complaint and the May 2026 Settlement**

26. On December 12, 2025, Parents filed a due process complaint, AHC No. 25-1614, challenging the Districts' December 2025 IEP and placement decision.

27. Student began attending To The Moon in December 2025.

28. The parties resolved AHC No. 25-1614 through a Settlement Agreement and Release that became effective on May 4, 2026 (the "Agreement"). On May 11, 2026, the Commission dismissed AHC No. 25-1614 with prejudice on Parents' motion.

29. The Agreement's release covers claims "for anything occurring prior to the date of the execution of this Agreement." Its covenant not to sue covers IDEA claims "for anything occurring from the beginning of time up to and including the date of the Effective Date execution of this Agreement." (Decision, Findings ¶¶ 4–5.) Neither provision releases nor bars claims arising from conduct after May 4, 2026.

30. In paragraph 11 of the Agreement, the parties agreed that the December 18, 2025 IEP provided FAPE and that no compensatory services were owed "from the beginning of time until the Effective Date." Paragraph 11 further provided that, upon any request to re-enroll, Student's interim placement would be home/hospital "until the Student's IEP team is able to amend the IEP by written agreement or convene an IEP team meeting within thirty (30) school days of re-enrollment," and that the Districts would "follow . . . all applicable laws and regulations." (Decision, Finding ¶ 6.)

31. The Agreement thus contemplated that Student's IEP would be revisited after re-enrollment by a functioning IEP team operating under the IDEA. Nothing in it fixed Student's placement for the 2026–27 school year, waived Parents' right to challenge a future IEP or placement decision, or exempted any future decision of the IEP team from due process review.

## C. Student's Progress at To The Moon

32. Over approximately nine months at To The Moon, Student made progress he had never achieved in a public setting. With a one-on-one paraprofessional and a program built first on safety, predictability, and trust, Student went from tolerating about ten minutes in the building to attending daily for an average of approximately two hours per day, compared with the fifteen to thirty minutes he had managed at Parkway.

33. Student participated in To The Moon's summer immersion program and in community-based learning experiences, and at the school's end-of-year celebration he came forward individually, without adult support, to receive an award before approximately 150 people.

34. Student's academic engagement increased markedly: he worked for longer periods, engaged in project-based learning and accredited virtual coursework, completed digital-media and self-planned STEM projects, resumed reading for pleasure, and showed increased tolerance for peers. His periods of dysregulation decreased in duration and intensity across settings, and Parents observed improvements in his mental health, self-care, and tolerance of demands.

35. Student's treating psychiatrist, Dr. Annemarie Loth, recommended To The Moon and has stated that it is his least restrictive environment.

36. These facts did not exist, had not yet occurred, and could not have been litigated when Parents filed AHC No. 25-1614 in December 2025.

## D. Re-Enrollment and the August 20, 2026 IEP Meeting

37. Beginning in May 2026, Parents repeatedly asked the Districts to reconvene Student's IEP team to consider his placement for the 2026–27 school year. The Districts did not respond. To obtain the IEP meeting the Agreement contemplated, Parents re-enrolled Student.

38. The Districts convened an IEP team meeting on August 20, 2026. At the outset, SSD announced that KVC had an opening and that Student could start there the following Monday.

39. To The Moon's director, Amanda Mathews, who is certified in special education and serves as Student's case manager and primary special education teacher, described Student's progress in detail and recommended he remain at To The Moon.

40. The Districts stated that they would place Student only through a DESE-approved private agency and would not consider To The Moon because it is not DESE-approved. When Parents asked whether any team member believed To The Moon was appropriate or that Student's progress was worth preserving, no Districts team member responded. Parkway staff acknowledged they had "not really seen" Student. No transition plan to KVC was developed; the team said only that Student could start on Monday. The Districts thus arrived at the meeting having already decided Student's placement and closed their minds to Parents' evidence and concerns.

41. Parents objected that moving Student to KVC would undo nine months of progress, require him to rebuild the relationships on which his access to education depends, cause trauma and regression, and place him in a setting he had already shown he could not tolerate. Parents also raised concerns about transportation, which Student had never used.

42. On August 20, 2026, Parents timely provided Notice pursuant to 34 C.F.R. § 300.148(d)(1)(ii) alerting Districts of their intent to enroll I.G. in a private school and seek reimbursement.

43. On August 21, 2026, the Districts issued a Prior Written Notice refusing Parents' request to place Student at To The Moon and identifying KVC as the location for his private separate placement. The Notice recited that the team had considered a private psychiatrist's

recommendation of To The Moon, although Dr. Loth's written recommendation was not provided to the Districts until after the meeting had ended.

44. Despite repeated requests, the Districts did not provide a new IEP document until September 9, 2026. Despite the full IEP team meeting on August 20, 2026, the IEP document still bears the December 8, 2025 meeting date. The IEP does not contain updated present levels or information from To The Moon. It does show updated concerns in the Parent Concerns section. The PWN denying To The Moon is attached to the IEP.

**E. The Second Due Process Complaint and the Commission's Decision**

45. On September 8, 2026, Parents filed a due process complaint, AHC No. 26-1026 (the "Due Process Complaint"), challenging the IEP and placement decision made at and after the August 20, 2026 meeting. The Due Process Complaint expressly disclaimed any challenge to the December 18, 2025 IEP and any relief for the period before the Agreement's effective date. (Due Process Compl. ¶ 32.)

46. The complaint alleged that the Districts denied Student FAPE for the 2026–27 school year by, among other things, predetermining his placement; refusing to consider an appropriate placement solely because it lacks DESE approval, *see Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7 (1993); failing to consider his progress, his individualized needs, and the continuum of placements, 34 C.F.R. §§ 300.115–.116; denying Parents meaningful participation, *see Fort Osage R-1 Sch. Dist. v. Sims ex rel. B.S.*, 641 F.3d 996 (8th Cir. 2011); and issuing an inaccurate Prior Written Notice while withholding the IEP.

47. On September 18, 2026, the Districts moved for involuntary dismissal on the ground of res judicata, relying on the Agreement and other matters outside the pleadings. Parents opposed the motion on September 28, 2026.

48. The Commission construed the motion as a motion for summary decision under 1 CSR 15-3.446(6) and, on October 2, 2026, granted it and dismissed the complaint without an evidentiary hearing. (Decision at 1–2, 7.)

49. Applying the four-element test of *Spath v. Norris*, 281 S.W.3d 346, 350 (Mo. App. W.D. 2009), the Commission held that the "thing sued for" and the cause of action were identical to those in AHC No. 25-1614 because Parents again sought placement at To The Moon rather than KVC. (Decision at 5–6.)

50. The Commission acknowledged that the Agreement bars only disputes arising "up to and including" its effective date, but held that Parents "simply cannot relitigate the exact same dispute the parties already settled," characterized the August 2026 complaint as "an attempt to continue the previous dispute," found that Parents "identify no facts that would distinguish their current demand," and concluded that the August 2026 IEP meeting and Prior Written Notice "do not, by themselves, establish a distinct cause of action." (Decision at 6–7.)

51. The Commission also denied Parents' request for leave to pursue claims under other statutes, stating that its authority is limited to IDEA claims. (Decision at 5 n.7.)

52. Parents are aggrieved by the Commission's findings and Decision within the meaning of 20 U.S.C. § 1415(i)(2)(A).

## COUNT I

**Judicial Review of the Administrative Decision**
**20 U.S.C. § 1415(i)(2); Mo. Rev. Stat. § 162.962**
**(Against All Defendants)**

53. Plaintiffs incorporate the foregoing paragraphs.

54. The Commission's Decision is erroneous as a matter of law and was entered without the evidentiary hearing required to resolve disputed facts, for at least the following reasons.

<u>The Commission applied claim preclusion to claims arising after the prior judgment.</u>

55. Claim preclusion bars only claims arising from the same transaction that was, or could have been, litigated in the prior action. *Chesterfield Vill., Inc. v. City of Chesterfield*, 64 S.W.3d 315, 318–19 (Mo. banc 2002) (following the Restatement (Second) of Judgments). It "generally does not bar claims that are predicated on events that postdate the filing of the initial complaint." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 414 (2020) (quoting *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582, 600 (2016)). A prior judgment "cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955); *see* Restatement (Second) of Judgments § 24 cmt. f (1982).

56. The claims in AHC No. 26-1026 arise from the August 20, 2026 IEP meeting, the IEP developed there, and the August 21, 2026 Prior Written Notice: acts that occurred more than three months after the Agreement's effective date, nine months after Parents filed AHC No. 25-1614, and in a new school year. Those claims did not exist when AHC No. 25-1614 was filed or dismissed and could not have been raised in it. The August 2026 decision was not a continuation of the December 2025 decision; it was a new, discrete act by a reconvened IEP team, made for a new school year on a new record.

57. The Commission's reasoning that Parents seek the "same placement" conflates the remedy requested with the claim. Under Missouri's transactional test, courts look to the "factual bases for the claims," *Chesterfield Vill.*, 64 S.W.3d at 319, and the factual basis here is a new IEP

team decision made on a new record. A parent who asks for the same relief in response to a new decision is not relitigating the old one. Under Missouri law, a later claim is separate where it rests on new ultimate facts that were unknown or yet to occur at the time of the first action. *See Kesterson v. State Farm Fire & Cas. Co.*, 242 S.W.3d 712, 716 (Mo. banc 2008); *Chesterfield Vill.*, 64 S.W.3d at 320. The August 2026 IEP meeting, the resulting IEP, and the August 21, 2026 Prior Written Notice are such facts.

<u>The IDEA makes each annual IEP and placement determination a distinct, reviewable decision.</u>

58. The IDEA required the Districts to have an IEP in effect at the beginning of the 2026–27 school year, to determine Student's placement at least annually, and to revise his IEP to address his progress and new information from Parents. 20 U.S.C. § 1414(d)(2)(A), (d)(4)(A); 34 C.F.R. §§ 300.116(b)(1), 300.324(b). Each such determination, and each prior written notice refusing a requested placement, is a new decision subject to due process review. 20 U.S.C. § 1415(b)(3), (b)(6), (o).

59. The Commission's reasoning would mean that once parents settle a dispute over one IEP, a district may make the same placement decision in every subsequent year, regardless of the child's progress, new evaluative data, or the process it follows, and no hearing officer could ever review it. That result cannot be squared with the IDEA's annual-review structure, its procedural safeguards, or § 1415(o).

60. The Commission's reliance on 34 C.F.R. § 300.323(a) and on the "short period of time" between the Agreement and the August 2026 meeting (Decision at 6) does not change the analysis. Preclusion turns on whether the claim arises from the same transaction, not on how much time has passed. In any event, the Agreement itself contemplated that the IEP team would meet

and could amend the IEP after re-enrollment, and the team did meet, received new information, and issued a new decision and a new notice.

<u>The Commission expanded the Agreement beyond its express terms.</u>

61. The preclusive effect of a dismissal entered on a settlement cannot exceed the scope of what the parties agreed to release. The Agreement's release and covenant not to sue are expressly limited to conduct occurring on or before May 4, 2026. The Commission acknowledged that limitation (Decision at 6) and then disregarded it, effectively rewriting the Agreement to bar future claims the parties did not release. Even a dismissal with prejudice bars only the same cause of action and "cannot be given the effect of extinguishing claims which did not even then exist." *Lawlor*, 349 U.S. at 327–28. Courts accordingly decline to apply claim preclusion to conduct postdating a settlement whose release excludes that conduct. *See Inkit, Inc. v. Airslate, Inc.*, No. 23-00793-RGA, 2024 WL 5187660 (D. Del. Dec. 20, 2024); *cf. Smith v. Rockwood R-VI Sch. Dist.*, No. 4:16-CV-1226-CEJ, 2017 WL 1633065 (E.D. Mo. May 2, 2017) (declining to dismiss IDEA-related claims based on a release whose scope was disputed).

62. The Commission's reliance on the settlement payments, Parents' statement that they intended to pursue other educational options, and the fact that Parents renewed their request for To The Moon after the Agreement (Decision at 6–7) addresses no element of claim preclusion. The Agreement expressly provided for re-enrollment and a new IEP meeting, and Parents used exactly that mechanism.

<u>The Commission resolved disputed facts against the non-moving party.</u>

63. Summary decision is permitted only where the movant establishes facts entitling it to a favorable decision and no party genuinely disputes those facts. 1 CSR 15-3.446(6)(A). The Commission instead drew inferences in the movants' favor, characterizing Parents' motive as "an

attempt to continue the previous dispute" and finding that the August 2026 determination was "the same" as the December 2025 determination. (Decision at 4, 6.)

64. The Commission's statement that Parents "identify no facts that would distinguish their current demand" (Decision at 6) is contradicted by the complaint, which alleged nine months of documented academic, behavioral, and social-emotional progress at To The Moon; the treating psychiatrist's recommendation; the To The Moon director's report at the August 2026 meeting; the Districts' refusal to consider any non-DESE-approved placement regardless of that evidence; the absence of any transition plan; the inaccuracy of the new Prior Written Notice; and the Districts' refusal to provide the new IEP. (Due Process Compl. ¶¶ 19–22, 25–31.) Whether the August 2026 decision was individualized, predetermined, or procedurally proper is a disputed question of fact that could not be resolved without a hearing.

<u>The Commission's dismissal denied Student and Parents the hearing the IDEA guarantees.</u>

65. By dismissing without reaching the merits, the Commission denied Parents the impartial due process hearing to which they are entitled under 20 U.S.C. § 1415(f) and Mo. Rev. Stat. § 162.961, on claims that, if proven, establish that the Districts denied Student FAPE for the 2026–27 school year.

66. On the merits, the preponderance of the evidence will show that the Districts predetermined Student's placement and closed their minds to Parents' evidence and concerns, including by categorically refusing to consider any placement lacking DESE approval, *Fort Osage*, 641 F.3d at 1004–05; failed to consider Student's progress, individualized needs, and least restrictive environment, 34 C.F.R. §§ 300.114–.116; denied Parents meaningful participation, *id.*; and issued a Prior Written Notice that did not accurately describe the options considered or the reasons for rejecting them, 20 U.S.C. § 1415(c)(1). The August 2026 IEP and placement are not

reasonably calculated to enable Student to make progress appropriate in light of his circumstances. *Endrew F.*, 580 U.S. at 399.

67. To The Moon is an appropriate placement for Student, and the equities favor relief. *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369–70 (1985); *Carter*, 510 U.S. 7; *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230 (2009). Its lack of DESE approval does not bar relief. *Carter*, 510 U.S. at 14; 34 C.F.R. § 300.148(c). Parents timely provided Notice pursuant to 34 C.F.R. § 300.148(d)(1)(ii) alerting Districts of their intent to enroll I.G. in a private school and seek reimbursement.

68. Plaintiffs request that the Court receive the administrative record and, pursuant to 20 U.S.C. § 1415(i)(2)(C)(ii) and Mo. Rev. Stat. § 162.962(1)(b), hear additional evidence, including evidence of Student's progress at To The Moon and of the August 2026 IEP team process, none of which was received by the Commission.

## RESERVATION OF ADDITIONAL CLAIMS

69. Plaintiffs reserve the right to amend this Complaint to assert claims under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq., Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and 42 U.S.C. § 1983 arising from the same facts, which the Commission declined to consider for lack of jurisdiction (Decision at 5 n.7).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

a. Order Defendants to file the complete record of the administrative proceedings in AHC No. 26-1026;

b. Reverse the Commission's October 2, 2026 Decision and declare that Plaintiffs' due process complaint challenging the August 2026 IEP and placement decision is not barred by res judicata or by the May 2026 Settlement Agreement;

c. Receive the administrative record and additional evidence and, on a preponderance of the evidence, find that Defendants denied Student a FAPE for the 2026–27 school year and that To The Moon Education is an appropriate placement for Student, and order Defendants to fund Student's placement at To The Moon, including tuition, related services, and transportation or mileage reimbursement;

d. Or, in the alternative, remand the matter to the Administrative Hearing Commission with instructions to conduct a full evidentiary hearing on the merits and issue a decision promptly and within the timelines of 34 C.F.R. § 300.515;

e. Order Defendants to reimburse Parents for tuition, transportation, and other educational expenses incurred as a result of the denial of FAPE, and award compensatory education for any regression or loss of educational benefit;

f. Award Plaintiffs their reasonable attorneys' fees and costs, including fees incurred in the administrative proceedings, under 20 U.S.C. § 1415(i)(3)(B); and

g. Grant such other and further relief as the Court deems just and proper.

Dated: November 16, 2026

Respectfully submitted,

**DRAGAN LAW FIRM, LLC**

/s/ Diane L. Dragan
Diane L. Dragan, #73591MO
131 Prospect Ave, Suite A
Kirkwood, MO 63122
Tel: (314) 788-7323
diane@draganlawfirm.com

**JUSTITIA LLC**

/s/ Alicia I. Dearn
Alicia I. Dearn, #64623MO
4428 Louisiana Avenue
St. Louis, MO 63111
Tel: (314) 887-1100
Fax: (314) 888-2234
notices@dearnlaw.com

*Attorneys for Plaintiffs*